IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERNESTO S. WEISBURG, | |
| Plaintiffs, | |
| v. | CIVIL ACTION |
| CHRISTOPHER M. PIEHOTA, et al., | NO. 16-4017 |
| Defendants | |

# MEMORANDUM

**SCHMEHL, J.**  /s/ JLS                                                                NOVEMBER 16, 2017

Defendants move to dismiss Plaintiff Ernesto S. Weisburg's Complaint. Mr. Weisburg *pro se* alleges Christopher M. Piehota, G. Clayton Grigg, James G. Kennedy, Matthew G. Olsen, and James Comey (collectively the "Defendants") violated his constitutional rights by discriminately placing him and other similarly situated American citizens on the Government's federal "No-Fly List" or "Selectee List" ("watch list"). Mr. Weisburg brings this suit against Defendants in their official-capacities only. For the reasons stated below, this Court will grant Defendants motion to dismiss without prejudice with leave to refile. Mr. Weisburg has forty-five (45) days to file an amended complaint if he can file a claim on a basis that can withstand legal challenge.

## A.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors,*

*Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

However, a document filed *pro se* must be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment

would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B.  ALLEGED FACTS**

After September 11, 2001, the need to monitor and protect against terrorism and terroristic threats increased, especially in airports across the United States. This need for increased monitoring focused on individuals suspected of some involvement with terrorism – both domestic and international. In turn, the United States created the "No-Fly List" and "Selectee List" ("watch list"), which has come under scrutiny for alleged racial profiling and discrimination. These watch lists identify certain individuals the Government itself deems too dangerous to fly, or require more careful inspection before flying.

Mr. Weisburg alleges the Government places individuals, such as him and other similarly situated American citizens, on the federal watch list without accountability or procedures to challenge such placement. (ECF Docket No. 1, ¶4.) Mr. Weisburg alleges members of these watch lists are "systematically subject to extra screenings at airports and land border crossings, and often find "SSSS" on their boarding passes . . . indicat[ing] a passenger's watch list status." (Id at ¶23.) This information is then disseminated to other government agencies such as the TSA and Customs and Border Protection ("CBP"). (Id at ¶ 25.) Mr. Weisburg argues placement on either watch list "diminishes and imperils" his and other citizens' ability to access the financial system and travel freely within the United States and abroad. (Id at ¶¶ 31-33.)

Moreover, Mr. Weisburg contends the watch list disproportionately targets American Muslims in cities with large numbers of Muslim residents, such as Dearborn, Chicago, Houston, New York, and San Diego – cities with the highest number of residents on the watch list. (Id at ¶ 66.) Mr. Weisburg claims the watch list targets Muslim Americans, and therefore, its standards

apply differently to Muslim Americans than for people of other faith-based backgrounds. (Id at ¶ 73.)

Finally, Mr. Weisburg argues the government entities responsible for the watch list do not provide travelers, such as Mr. Weisburg and similarly situated American citizens, with "fair and effective mechanism" to challenge the agencies decision placing them on the watch list. (Id at 77.) He alleges: "[a]n individual . . . who has been prevented or hindered from travel by being placed on a federal watch list has no clear avenue for redress." (Id at ¶ 78.) Mr. Weisburg alleges that similarly situated individuals may seek redress through the DHS Traveler Redress Inquiry Program ("DHS TRIP") which then submits complaints to the Terrorist Screen Center ("TSC"); however, he claims TSC does not provide any publicly available information on its decision making process. (Id at ¶ 79-81.)

Mr. Weisburg, on behalf of himself and other similarly situated American citizens, specifically argues: he is routinely referred to secondary inspection; he is routinely asked questions about his religious beliefs and practices; and his boarding pass is stamped with an "SSSS" designation – indicating he is designated as a "known or suspected terrorist." He also claims he filed a redress request through DHS TRIP, filed a "freedom of information" with the FBI which was denied, and filed an appeal with the Justice Department, which was also denied.

C. **ANALYSIS**

Mr. Weisburg asserts federal law violations against Defendants in their official capacities only. At the time of Mr. Weisburg's initial filing, Defendants were either members of the Federal Bureau of Investigation, Transportation Security Administration ("TSA"), or the National Counterterrorism Center ("NCTC"); Mr. Weisburg alleges these agencies contributed to his placement on the "watch list."

4

Defendants move for dismissal asserting: 1) Mr. Weisgburg lacks standing because he cannot show he personally suffered a concrete and particularized injury; and 2) the United States is immune from suit and it did not waive its sovereign immunity. However, this Court will focus on Mr. Weisburg's failure to respond and the United States' sovereign immunity.

### 1. **Defendants' motion to dismiss is uncontested.**

Mr. Weisburg failed to respond to the motion to dismiss filed by Defendants. Failure to make a timely response allows the court to treat a motion as uncontested. *Move Organization v. City of Philadelphia*, 89 F.R.D. 521, 523 (E.D. Pa. 1981). There is no question that Mr. Weisburg actually received a copy of the motion to dismiss, as the certificate of service states that the motion was served upon him at his address listed in the Complaint. Mr. Weisburg's response was due in September of 2016; he has not yet responded, nor has he requested additional time to do so.

The Court may grant uncontested or unopposed motions under Rule 7.1(c). This rule, governed by the Rules of Civil Procedure for the Eastern District of Pennsylvania, provides: "[i]n the absence of a timely response, the motion may be granted as uncontested except as provided under [the Federal Rules of Civil Procedure governing summary judgment motions]." *See also Celestial Community Development Corp., Inc., v. City of Philadelphia*, 901 F.Supp.2d 566, 578 (E.D. Pa. 2010) ("To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested."); *Nelson v. DeVry, Inc.*, No. 07-4436, 2009 WL 1213640 (E.D. Pa. April 23, 2009) ("Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed.").

Mr. Weisburg, failed to respond to Defendants' motion. Mr. Weisburg's failure to respond endangers the success of his lawsuit. This Court could grant Defendants' motion to dismiss as unopposed. However, even if this Court were not to consider the motion as unopposed, we would nonetheless grant the motion on the merits. The substantive arguments are addressed below.

### 2. The United States is immune from suit under the doctrine of Sovereign Immunity.

Sovereign immunity precludes Mr. Weisburg from suing the United States or Defendants for acts committed in their official capacity. The doctrine of sovereign immunity bars suit against the United States and its agencies unless immunity is waived. *U.S. v. Nicolet, Inc.*, 1986 WL 15017, at *2 (E.D. Pa. 1986). Mr. Weisburg sues Defendants in their official capacities for allegedly violating his constitutional rights by placing him, and other similarly situated American citizens, on a terrorist watch list. Defendants argue they, and the United States, are immune from suit under sovereign immunity. This Court agrees.

Although sovereign immunity bars suit against the United States and its agencies, immunity may be waived by congressional statute. *Jaffee v. United States*, 592 F.2d 712, 718 (3d Cir. 1979). "An immunity waiver, if it exists at all, must be found in the statute giving rise to the cause of action." *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir. 1982). Absent a statutory waiver from Congress, the Courts have no jurisdiction to entertain suits against the United States or its agencies. *Id.* This waiver of sovereign immunity must be "unequivocally expressed" in the statute and cannot be implied. *U. S. v. Mitchell*, 445 U.S. 535, 538 (1980). Here, Mr. Weisburg relies on: 1) Article III of the United States Constitution; 2) numerous statutes; and 3) the Administrative Procedure Act ("APA") to provide relief and redress for the Government's alleged constitutional violations.

### a. Article III of the United States Constitution

Mr. Weisburg first relies on Article III of the United States Constitution as a basis for jurisdiction and waiver of sovereign immunity. (ECF Docket No. 1, ¶ 17.) Article III establishes federal review jurisdiction. U.S. Const. art. III. The Constitution, however, does not itself contain a waiver of sovereign immunity and does not strip the United States of its sovereign immunity. *Federal Maritime Commission v. South Carolina State Ports Authority*, 535 U.S. 743, 752 (2002); *see also Jaffee*, 592 F.2d 715-18 (concluding the Constitution does not waive the Government's sovereign immunity in a suit for damages). The Government may not be sued without an immunity waiver found in a statute giving rise to the cause of action,. Thus, Mr. Weisburg's reliance on Article III is misguided and improper.

### b. Waiver of Immunity By Statute

Along with Mr. Weisburg's reliance on Article III, Mr. Weisburg seeks relief under: 1) the Federal Question statute, 28 U.S.C. § 1331 and *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971); 2) the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202; 3) the Civil Rights and Elective Franchise statute, 28 U.S.C. § 1343(a)(4); and 4) 28 U.S.C. § 1357. To survive a jurisdictional bar to suit, "waiver of sovereign immunity must come from the statute giving rise to the cause of action." *Nicolet, Inc.*, 1986 WL 15017, at *2. Accordingly, none of the statutes relied upon by Mr. Weisburg provide an unequivocal waiver of sovereign immunity by the Government. This Court will address each in turn.

In his Complaint, Mr. Weisburg cites the Federal Question statute, the Declaratory Judgment Act, and *Bivens* as a basis for jurisdiction. First, neither the Federal Question Jurisdiction statue nor the Declaratory Judgment Act statute, 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201-2202 respectively, include an explicit waiver of the Government's sovereign immunity

from suit. *Id.*; *see also Army and Air Force Exchange Service v. Sheehan*, 456 U.S. 728 (1982); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Without this explicit waiver of sovereign immunity, Mr. Weisburg is precluded from suing the United States under § 1331 and §§ 2201-2202. Second, Mr. Weisburg incorrectly relies on *Bivens*, which allows victims to recover damages for constitutional violations by federal officials in their individual capacities. *Russo v. Glasser*, 279 F.Supp.2d 136, 142 (D. Conn. 2003) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)). Mr. Weisburg, however, only alleges violations against Defendants in their official capacities; therefore, *Bivens* is inapplicable here. (ECF Docket No. 1, ¶ 14-16.)

Similarly, the Civil Rights and Elective Franchise statute under 28 U.S.C. § 1343 does not contain a waiver of sovereign immunity. Section 1343 states "[t]he district courts shall have original jurisdiction over any civil action authorized by law to be commenced by any person." 28 U.S.C. § 1343. General jurisdiction statutes such as §§ 1343 (and 1331) do not automatically waive the government's sovereign immunity. *Hughes v. United States*, 953 F.2d 531, 539 n. 5 (9th Cir. 1992). Specifically, nothing in § 1343 can be construed to unequivocally express a waiver of the government's sovereign immunity. *Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011) (citing the Tenth Circuit's conclusion that 28 U.S.C. § 1343(a)(4) does not waive the government's sovereign immunity). Mr. Weisburg has not alleged any cognizable violations of federal statutes pertaining to civil rights which may trigger sovereign immunity.

While none of the above statutes contain waivers of sovereign immunity, 28 U.S.C. § 1357 contains such a waiver. This waiver, however, is limited to revenue cases and voting rights cases. *City Of Albuquerque v. United States Department Of Interior*, 379 F.3d 901, 907 n. 1 (10th Cir. 2004). "28 U.S.C. § 1357 provides district courts with original jurisdiction over civil

actions brought to recover damages for injuries sustained when a plaintiff has acted to 'protect[ ] or collect[ ] . . . any of the revenues, or to enforce the right of citizens of the United States to vote in any State." *Russo,* 279 F.Supp.2d at 141. The present case does not involve revenue or voting rights; therefore, the limited waiver exception does not apply.

Therefore, none of the statutes relied upon by Mr. Weisburg provide a basis for waiver of the Government's sovereign immunity.

### c. Limited Waiver of Immunity and Reviewability of the APA

Mr. Weisburg relies on the APA, 5 U.S.C. §§ 702 and 706, as a basis for judicial review and suit against the United States. Mr. Weisburg's claim fails because the APA does not waive the Government's immunity from suit and only grants judicial review to "final agency actions." The APA grants this right of judicial review to persons suffering legal wrongs due to specified agency action. *Hindes v. F.D.I.C.*, 137 F.3d 148, 161 (3d Cir. 1998). Nevertheless, the right of judicial review is limited to: 1) review of actions "made reviewable by statute and final agency action for which there is no adequate remedy in court"; or 2) withdrawal of the right of review "to the extent that statutes preclude judicial review." *Id* at 161-62 (citing 5 U.S.C. §§ 701(a)(1), 704). In other words, the APA does not allow judicial review where another statute specifically prohibits it, and therefore, § 702 of the APA must be read in conjunction with other jurisdictional statutes waiving sovereign immunity. Id. at 163 (citing §701(a)(1)); *see also City Of Albuquerque*, 379 F.3d at 907.

Irrespective of the limits on Judicial Review, the APA provides a limited waiver of the United States' sovereign immunity not found in the statutes pled in Mr. Weisburg's Complaint. Section 702 of the APA provides: "A person suffering legal wrong because of an agency action . . . is entitled to judicial review thereof. An action . . . seeking relief other than money damages .

. . shall not be dismissed . . . on the ground that it is against the United States." 5 U.S.C. § 702; *see also City Of Albuquerque*, 379 F.3d at 907. This waiver is limited when the underlying statute granting consent to sue *expressly or impliedly* forbids the relief sought. *Id.* (emphasis added); *see also State of New Mexico v. Regan*, 745 F.2d 1318, 1321-22 (10th Cir. 1984).

This waiver is further limited by the APAs prohibition of suits for money damages. *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 259 (1999). Congress has waived immunity for a wide range of suits, including those seeking traditional money damages, such as: 1) the Federal Tort Claims Act; and 2) the Tucker Act. *Id.* The Supreme Court defines "money damages" under § 702 as "a sum of money used as compensatory relief . . . [and] given to the plaintiff to substitute for a suffered loss." *Id.* at 262. Here, this case does not involve the Federal Tort Claims Act or the Tucker Act; Mr. Weisburg clearly seeks money damages in the form of compensatory relief. Additionally, none of the statutes raised in Mr. Weisburg's Complaint and discussed in this Opinion waive sovereign immunity for the United States. Therefore, the Government's sovereign immunity is not waived.

Notwithstanding this prohibition of a money damages suit and absence of another statute waiving sovereign immunity, the APA precludes judicial review unless the agency action is considered "final." *Id.* at 162. The APA, however, does not define "final." The Supreme Court provides guidance concluding "the core question is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties." *Hindes*, 137 F.3d at 162. Final agency action requires the action be a "definitive statement of [the agency's] position" with concrete legal consequences. *Id.* More simply, final agency action is determined by its consequences or practical effects. *Id.*

Agency action is final, for example, where Food and Drug manufacturers were required to provide certain information on drug labels and advertisements based on specific regulations. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967) (rev'd on other grounds). The Court in *Abbott Laboratories* determined those regulations were "definitive" statements which had a direct and immediate effect. *Id.* at 149-50. However, the Supreme Court in *Standard Oil* concluded the Complaint issued by the FTC was not a final agency action because it warranted further inquiry and was not a definitive statement of the Commission's position.[1] *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 239 (1980).

Apart from Mr. Weisburg's allegations that "DHS TRIP offers no meaningful review of the watch list designation" and his purported filing of redress through DHS TRIP and subsequent unanswered requests for information, Mr. Weisburg does not specify what final agency action he is appealing and whether it contained concrete legal consequences. (ECF Docket No. 1, ¶¶ 83, 90-91.) Failure to specify a final agency action, the contents of such action, and whether he was personally injured, restricts the Court's ability to determine whether judicial review is proper.[2] (ECF Docket No. 4, at 7.) Thus, even if Mr. Weisburg did not seek monetary damages, judicial review would be improper given the absence of an alleged final agency action.

**D.   CONCLUSION**

In the accompanying Order, this Court grants Defendants' motion to dismiss. Mr. Weisburg's official-capacity claims are barred by sovereign immunity and judicial review is improper under the APA absent a "final agency action." Given Mr. Weisburg's *pro se* status, we

---

[1] The FTC served eight major oil companies, including Standard Oil Company of California, a complaint averring the Commission had "reason to believe" companies were violating Section 5 of the Federal Trade Commission Act. *F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 234 (1980).

[2] Conspicuously, Mr. Weisburg failed to join TSA as a defendant in this litigation. According to the Sixth Circuit, Congress has specifically directed DHS and TSA to establish a redress process for travelers who believe were wrongly included on the No-Fly List. *Mokdad v. Lynch*, 804 F.3d 807, 811-12 (6th Cir. 2015). Because TSA has issued regulations carrying out statutory responsibilities regarding redress procedures, TSA is a required party to the litigation. *Id.*

will give him forty-five (45) days to file an amended complaint if he can file a claim on a basis that can withstand legal challenge. If Mr. Weisburg fails to do so, his case will be dismissed without further notice.